IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AVTAR SINGH,**<br><br>Petitioner,<br><br>v.<br><br>**RONALD MURRAY,**<br><br>Respondent. | Case No. 1:17-cv-00739 MJS (HC)<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**(ECF No. 10)**<br><br>**CLERK OF COURT DIRECTED TO CLOSE CASE** |

Petitioner, an immigration detainee represented by counsel, proceeds with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges his continued detention under 8 U.S.C. § 1226(c),[1] an immigration statute that mandates the Attorney General to detain aliens deemed inadmissible or deportable for committed criminal acts. In his petition, Petitioner argues that United States Immigration and Customs Enforcement ("ICE") had no legal authority to detain him and that his continued detention violates his Fourth and Fifth Amendment rights. (ECF No. 2-1.) The parties

---

[1] As discussed below, Petitioner's status as a detainee pursuant to 8 U.S.C. § 1226(a) or 8 U.S.C. § 1226(c) is a point of contention between Petitioner and Respondent.

1

have consented to Magistrate Judge jurisdiction for all purposes. (ECF Nos. 7-9.)

On July 26, 2017, Respondent moved to dismiss the petition for Petitioner's failure to exhaust administrative remedies. (ECF No. 10) On September 14, 2017, Petitioner filed opposition to the motion. (ECF No. 17.) Respondent filed a reply on September 20, 2017. (ECF No. 18.) The matter is deemed submitted.

For the reasons outlined below, the motion to dismiss is granted.

**I.     Background**

Petitioner is currently being held in the custody of Ronald Murray, Warden of the Mesa Verde Detention Facility located at 425 Golden State Avenue in Bakersfield, California ("the Facility"). The Facility is a private detention center owned by The GEO Group, Inc. and is operated on behalf of United States Immigration and Customs Enforcement ("ICE"). (ECF No. 2.)

**A.     Factual Background**

Petitioner is a Legal Permanent Resident ("LPR") who left the United States but returned in November of 2014 via the Los Angeles International Airport port of entry as an arriving alien. The United States Customs and Border Protection ("CBP") inspected and interviewed Petitioner upon his reentry. Instead of admitting Petitioner and stamping Petitioner's passport, CBP confiscated Petitioner's LPR and Indian passport and paroled him into the United States as an "alien seeking admission."

In June 2015, the CBP issued a Notice to Appear ("NTA") alleging that Petitioner was subject to removal proceedings as an inadmissible alien by reason of having committed an offense covered in 8 U.S.C. § 1182(a)(2)(A)(i). (ECF No. 2-2 at 5-7.) This NTA alleged that Petitioner had been convicted of felony false imprisonment in violation of California Penal Code section 236/237 and willful harm or injury to a child in violation of California Penal Code section 273a(b). ICE took Petitioner into custody in March of 2016 relying on this NTA.

Petitioner's attorney filed a motion to terminate the immigration proceedings based on legal deficiency in the NTA. On April 18, 2017, before the May 16, 2017

1  hearing on the motion to terminate, ICE issued a second NTA that alleged that
2  Petitioner's criminal offenses were covered by 8 U.S.C. § 1227(a)(2)(E)(i), while also
3  changing Petitioner's status from an "alien seeking admission" to an "admitted alien".
4  (ECF No. 2-2 at 9-10.)

5  The immigration judge granted Petitioner's motion on May 16, 2017, terminating
6  the removal proceedings without prejudice. (ECF No. 2-2 at 12.) Petitioner's attorney
7  immediately requested that the immigration judge order Petitioner to be released from
8  ICE custody. However, the immigration judge denied this motion to change Petitioner's
9  custody status on the grounds that he was a "danger." (ECF No. 10-1.) Petitioner
10 appealed that bond determination on June 14, 2017. (ECF No. 10-2.) The appeal of the
11 bond ruling is pending.

12 Regulations governing immigration court proceedings provide that the immigration
13 judge's order does not become final until the passage of the time for ICE to file an
14 appeal. ICE has filed, and has pending, an appeal of the immigration judge's order
15 terminating proceedings. Petitioner remains in custody while that appeal and his appeal
16 of the bond ruling are pending.

### B. Petition for Habeas Corpus

As in his motion to terminate the immigration proceedings, Petitioner claims that he was taken into custody by ICE -- and continues to be held by ICE -- without a legal basis. (ECF No. 2.) Specifically, Petitioner alleges that the crimes alleged in the NTA did not make him inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(A)(i). Petitioner also claims that he remains an "alien seeking admission" per the initial NTA.

Furthermore, Petitioner claims that he is being held pursuant to the mandatory detention provisions of 8 U.S.C. § 1226(c). Release of an alien detained under 8 U.S.C. § 1226(c) is allowed only where related to the non-citizen's cooperation with a criminal investigation or status as a material witness. See 8 U.S.C. § 1226(c)(2). Petitioner attacks this basis of detention as a violation of his constitutional rights and asserts that habeas relief in this Court is the only practical means of attaining release, as the

immigration courts cannot rule on the constitutionality of his initial detention.

**C.    Motion to Dismiss**

Respondent moves to dismiss on the grounds that (1) Petitioner has failed to exhaust administrative remedies with the immigration court, or, alternatively, (2) the petition should be dismissed on the merits. (ECF No. 10.)

Respondent also states that Petitioner is being detained pursuant to the Attorney General's discretionary authority under 8 U.S.C. § 1226(a) rather than the mandatory detention provisions of 8 U.S.C. § 1226(c). (Id.) In his opposition, Petitioner contests this, claiming that Petitioner remains an "alien seeking admission" subject to mandatory detention.

Release of an alien detained under Section 1226(c) is allowed only where related to the non-citizen's cooperation with a criminal investigation or status as a material witness. See 8 U.S.C. § 1226(c)(2). For aliens detained pursuant to Section 1226(a), the Attorney General "may release an alien on (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole[.]" See 8 U.S.C. § 1226(a)(2).

However, as discussed below, whether Petitioner is detained pursuant to Section 1226(a) or Section 1226(c) is irrelevant to the resolution of this motion because the Ninth Circuit mandates a bond hearing every six months for immigration detainees held under either Section and the standards are identical for both. See Rodriguez v. Robbins, 804 F.3d 1060, 1078-79, 1084-85 (9th Cir. 2015).

**II.    Legal Standard**

**A.    Immigration Detention**

Congress enacted a multi-layered statute that provides for the continued civil detention of aliens pending removal. See Prieto-Romero v. Clark, 534 F.3d 1053, 1059 (9th Cir. 2008). Where an alien falls within this scheme affects whether his detention is discretionary or mandatory and the kind of review process available to him. Id. at 1057. The statutory authority of the Attorney General to detain an alien during removal

proceedings and following the issuance of a final removal order is found in 8 U.S.C. § 1226 and 8 U.S.C. § 1231. Section 1226 provides authority to detain aliens before a removal order becomes final ("pre-order") and section 1231 applies to aliens for whom a final removal order has been issued ("post-order").

Under Section 1226(a), the government has discretion to either detain arrested aliens or release them on a bond or "conditional parole." At these initial bond hearings, the detainee has the burden of establishing "that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). "After an initial bond redetermination," the detainee's release from custody "shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

Section 1226(c)(1)(A) states that "[t]he Attorney General shall take into custody any alien who is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." Section 1182(a)(2) states that aliens are inadmissible based on conviction of certain crimes, including a crime involving moral turpitude or a violation of any state, federal or foreign law or regulation relating to a controlled substance. See 8 U.S.C. § 1182(a)(2)(A)(i). Release of an alien detained under § 1226(c)(1) is allowed only if necessary under the witness protection program. See 8 U.S.C. § 1226(c)(2).

The Ninth Circuit requires the government to automatically conduct bond hearings for individuals detained under Section 1226(a) or Section 1226(c) every six months "so that [they] may challenge their continued detention as the period of . . . confinement grows." Rodriguez, 804 F.3d at 1078-79, 1084-85. At these Rodriguez hearings, the government bears the burden to prove "by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." Id. at 1087 (internal citation and quotation marks omitted). This is "an intermediate burden of proof that is more than a preponderance of the evidence but less than proof beyond a reasonable

doubt." Id.

### B.     Exhaustion of Administrative Remedies

The district courts have authority to issue writs of habeas corpus pursuant to 28 U.S.C. § 2241 directing the release of prisoners who are 1) being held under the color of authority of the United States, 2) being held for acts done or omitted in pursuance of an Act of Congress, or 3) being held in violation of the Constitution. 28 U.S.C., § 2241(c).

The Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." Castro–Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001), abrogated on other grounds by Fernandez–Vargas v. Gonzales, 548 U.S. 30 (2006). Courts may require prudential exhaustion where: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007).

When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused. See Morrison–Knudsen Co. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir. 1987) (when confronted by an unexcused failure to exhaust administrative remedies, a district court "may dismiss the action pending exhaustion of administrative remedies, or it may stay its own proceedings pending administrative review"); see also McCarthy v. Madigan, 503 U.S. 140, 146–49 (1992) (recognizing "at least three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion"), superseded by statute on other grounds as stated in Booth v. Churner, 532 U.S. 731 (2001); Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (identifying factors a court should consider when deciding whether to excuse the prudential exhaustion

requirement in a particular case).

**III.    Discussion**

The petition alleges that ICE never had authority to detain Petitioner and that there was no procedure to challenge the unlawful detention. (ECF No. 17 at 1-2.) Simultaneously, however, Petitioner acknowledges that appeals of the motion to terminate proceedings and the motion for bond are pending. (Id. at 2). Petitioner's claim notwithstanding, the Court finds that there is an available avenue in immigration court to challenge his purportedly unlawful detention and that it is prudent that the immigration court proceedings be exhausted before the matter is addressed in a habeas action.

### A.    Exhaustion would not be Futile

A court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted). None of these circumstances are present here.

In Hernandez v. Sessions, 872 F.3d 976, 989-90 (9th Cir. 2017), the Ninth Circuit concluded an "administrative appellate record [wa]s not necessary to resolve the purely legal questions presented by Plaintiffs' challenge." There, the petitioner challenged the factors on which immigration courts make bond determinations and the government conceded that the Board of Immigration Appeals' ("BIA") position on the question at issue was already set. Id. Accordingly, exhaustion of administrative remedies would lead to a predictable result. That is not the case here where Petitioner's challenge to his detention will not be automatically denied by BIA. To the contrary, the immigration judge at the first level of review has actually decided in Petitioner's favor. Thus, Petitioner's case is not consistent with Laing and Hernandez where the Ninth Circuit held that exhaustion of administrative remedies may be waived when they would be a futile gesture.

In Araujo-Cortes v. Shanahan, 35 F.Supp.3d 533 (S.D.N.Y. 2014), a district court

in the Southern District of New York concluded that an immigration detainee being held under the mandatory detention provisions of 8 U.S.C. § 1226(c) need not exhaust administrative remedies because it would be futile where: the immigration judge had denied detainee's application for bond hearing; the BIA had previously rejected the detainee's claim that the mandatory detention statute did not apply to him; the BIA did not have jurisdiction to adjudicate constitutional issues; and, the constitutional claim was not predicated on procedural errors. None of these circumstances exist in the instant case.

First, as noted above, the petition here does not challenge the constitutionality of the mandatory detention provisions of 8 U.S.C. § 1226(c); rather, Petitioner is challenging ICE's application of those provisions in a manner that the immigration courts are uniquely qualified to address. In fact, the mandatory detention provisions of Section 1226(c) have already been challenged in the Ninth Circuit, and, as noted above, the Court concluded that detainees held under both Sections 1226(a) and (c) are permitted bond hearings every six months. See Rodriguez, 804 F.3d at 1078-79, 1084-85.

Here, the immigration court did not deny Petitioner's application for a bond hearing, but, rather, held such a hearing. Petitioner's wife and adult daughters testified there that he was no danger to them. (ECF No. 10-2 at 2.) The immigration court nevertheless concluded that Petitioner was a danger and denied his request for bond. (Id. at 4.) Contrary to Petitioner's statement here that bond "was denied because of the regulations governing immigration court proceedings" (ECF No. 2-2 at 3), the record is clear that Petitioner was denied bond on the merits of his request pursuant to standards established in Rodriguez. And unlike Araujo-Cortes and Hernandez, Petitioner's appeal before the BIA is not foreclosed by way of law. In the Notice of Appeal, Petitioner argues that the immigration judge erred in denying the request for bond based upon its application of the facts. (ECF No. 10-2 at 2.) Should the BIA agree with Petitioner and overrule the immigration judge, then Petitioner's detention would be concluded.

While a successful appeal of the bond ruling would not eliminate the underlying

threat of removal, Petitioner's substantive challenge to removal proceedings is still pending and capable of resolution by the immigration courts. The first-level immigration judge granted Petitioner's motion to terminate proceedings. (ECF No. 2-2 at 12.) That ruling is currently stayed and on appeal by ICE, and Petitioner may eventually prevail on that appeal. Petitioner prevailed at the first level and the burden is now on the government to demonstrate error in that ruling. If the government does not meet its burden, then removal proceedings will be terminated.

As demonstrated here, Petitioner has avenues to contest both his pre-removal order of detention and the removal proceedings.r. He has been granted a substantive detention hearing, which he lost on the merits and is currently appealing, and he has also been granted termination of the removal proceedings, a result currently on appeal. Should Petitioner prevail on one or both of the pending immigration appeals, his purportedly unlawful detention would be concluded. Accordingly, exhaustion of the pending immigration court proceedings would not be futile.

**B.    Exhaustion would be Prudential**

As noted above, exhaustion is prudential when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga, 488 F.3d at 815. Applied here, each of these factors weighs in favor of exhaustion.

First, the immigration courts, as the name implies, are experts in the field of immigration law. Petitioner challenges ICE's purportedly improper application of 8 U.S.C. § 1226(c) to detain him. Petitioner already prevailed once in the immigration courts in a challenge to the NTA. (ECF No. 2-2 at 12.) The NTA challenged by that motion is the basis for Petitioner's continued detention. The BIA is capable of reaching the same conclusion as was reached by the first level immigration judge; that would eliminate removal proceedings against Petitioner and allow for an end to his detention. Agency

expertise expressed in a BIA ruling would generate a complete record of the case.

In Singh v. Holder, 638 F.3d 1196, 1200-01 (9th Cir. 2011), the Ninth Circuit determined that prudential exhaustion was not required where the administrative record was not necessary to decide petitioner's challenge to the constitutionality of procedures at Casas hearings. In that instance, the government's procedures were in place and a BIA ruling following those procedures would not generate a useful record for which the Court to rule on. That is not the case here. Petitioner does not raise constitutional challenges to the inherent process used by immigration judges and the BIA; rather, he challenges the legal basis of his detention. This is a factual and legal determination that the BIA may resolve in one direction or another.

Furthermore, in Puga, the petitioner had presented his claim for ineffective assistance of counsel before the district court without bringing the same claim before the BIA. This precluded the BIA from the "first pass on the claims in order to generate a proper record for review." 488 F.3d at 815. Similarly, here, Petitioner is raising the illegality of his detention before this Court before the BIA has had a "first pass" to address the claim and generate a record for review. Currently, the only record is the decision of the first level immigration judge finding that the proceedings should be terminated. That decision is the subject of an appeal before the BIA, as is the decision of that same judge concerning Petitioner's bond. In order for this Court to have a sufficient record on which to rule on the habeas petition, it is paramount that the BIA address the legality of Petitioner's detention first. Without such a review, the record is incomplete.

Second, finding exhaustion unnecessary here would encourage bypass of the administrative scheme. As noted, that scheme is capable of resolving this matter on the merits. (See supra at 7-8.) Thus, It is unnecessary for the Court to intercede at this stage and doing so would encourage others to deliberately bypass the administrative system in place -- i.e., the immigration appeals system -- to address erroneous decisions entered by first level immigration judges.

Finally, contrary to Petitioner's assertion, administrative review is likely to

1 determine whether the immigration judge erred in denying bond for Petitioner or in
2 granting his motion to terminate proceedings. Resolution of the pending appeals before
3 the BIA in Petitioner's favor would preclude the need for judicial review; a reversal of the
4 bond ruling would end Petitioner's pre-order detention and the BIA's upholding of the
5 order terminating proceedings would terminate proceedings, providing grounds for
6 Petitioner's release from ICE custody. (See supra at 7-8.)

Accordingly, it is prudential that Petitioner exhausts his administrative remedies before pursuing this matter in habeas proceedings.

## IV. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Respondent's motion to dismiss for failure to exhaust administrative remedies (ECF No. 10) is GRANTED and this matter is DISMISSED WITHOUT PREJUDICE. The Clerk of Court is directed to CLOSE THIS CASE.

IT IS SO ORDERED.

Dated: December 8, 2017      /s/ *Michael J. Seng*
                             UNITED STATES MAGISTRATE JUDGE